No. 28190

**The People of the State of Colorado v. James A. Weeks**

(591 P.2d 91)

Decided February 26, 1979. Rehearing denied March 19, 1979.

William D. Harmsen, District Attorney, Reid C. Pixler, Deputy, Michael R. Dodson, Deputy, for plaintiff-appellant.

Gregory Walta, State Public Defender, Craig L. Truman, Chief Deputy, Charles R. Greenacre, Deputy, for defendant-appellee.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

This appeal was taken by the prosecution to review an order dismissing five counts of an information which charged violations of section 18-9-111(1)(e), C.R.S. 1973 (1976 Supp.) (telephone harassment). The order was entered after the defense filed a motion asserting that the telephone harassment statute was unconstitutional on its face because it was vague and overbroad and violated the defendant's First Amendment rights.

The defendant's speech was allegedly tied to a series of telephone calls to a woman in Delta, Colorado. The calls were made to the woman's

home and were laced with sexual suggestions and descriptions of sex acts. The telephone calls were conceded to be patently offensive. The defense claimed that the three-prong test for obscenity set forth in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), was not included in the harassment statute. We adopted the standards set forth in *Miller v. California, supra,* in *People v. Tabron,* 190 Colo. 149, 544 P.2d 372 (1976), in connection with our constitutional review of the then existing Colorado obscenity statute (1971 Perm. Supp., C.R.S. 1963, 40-7-102(1)(a)). We reverse the ruling of the trial court and remand with directions to reinstate the charges.

Section 18-9-111(1)(e), C.R.S. 1973 (1976 Supp.) provides:
"HARASSMENT. (1) A person commits harassment if, with intent to harass, annoy, or alarm another, he:

. . . .

"(e) Initiates communication with a person, anonymously or otherwise by telephone, in a manner intended to harass or threaten bodily harm or property damage, or makes any comment, request, suggestion, or proposal by telephone which is obscene; or

. . . . .

"(1.5) As used in this section, unless the context otherwise requires, 'obscene' means a patently offensive description of ultimate sexual acts or solicitation to commit ultimate sexual acts, whether or not said ultimate sexual acts are normal or perverted actual or simulated, including masturbation, cunnilingus, fellatio, anilingus, or excretory functions."

I.

■ The defense claims that section 18-9-111(1)(e), C.R.S. 1973 (1976 Supp.) is unconstitutional because it is vague and overbroad. *See Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); *Bolles v. People,* 189 Colo. 394, 541 P.2d 80, (1975). Section 18-9-111(1)(e), C.R.S. 1973 (1976 Supp.) is not vague. Nor may the defendant rely upon the overbreadth argument because he lacks standing to contest the validity of section 18-9-111(1)(e) on that ground.

■ A criminal statute may be vague because "men of common intelligence must generally guess at its meaning." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). But section 18-9-111(1)(e) is clearly addressed to speech such as that which the prosecution contends the defendant used. The remarks to which defendant allegedly subjected the victim in this case can fairly be characterized as "a patently offensive description of ultimate sexual acts or solicitation to commit ultimate sexual acts." In that context, "it is all but frivolous to suggest that the section fails to give adequate warning of what activities it proscribes or fails to set out 'explicit standards' for those who must apply it." *Broadrick v. Oklahoma, supra,* at 607.

Defendant has no standing to attack section 18-9-111(1)(e), C.R.S. 1973 (1976 Supp.) on the grounds that it is overbroad. The doctrine of overbreadth is designed to prevent the state, when it regulates unprotected speech, from encroaching upon protected communications which are arguably within the statute's reach. Generally, defendants lack standing to attack a criminal statute on the ground that prosecution of another defendant under that statute would be unconstitutional. Because of a judicial sensitivity to any potential invasion of First Amendment interests, this rule of standing is changed when the statute in question regulates speech. In such cases, a defendant is granted standing to assert the First Amendment rights of others, in order to ensure that the statute does not chill the speech of those who may refrain from engaging in protected dialogue out of a fear that they will violate the statute. *Broadrick v. Oklahoma, supra.*

But the doctrine of overbreadth is used sparingly, because a statute which has been found overbroad may not be used as the basis for prosecution in any case. *Broadrick v. Oklahoma, supra.* Thus, use of the doctrine is reserved for those defendants whose speech is at the fringes of that activity which the statute is designed to regulate. Those defendants whose speech is central to the interests which the statute seeks to protect and is clearly of a type regulated by the statute in question, cannot attack the statute as overbroad. They must demonstrate that the statute is unconstitutional as applied to them. *Broadrick v. Oklahoma, supra; Bolles v. People, supra.*

Defendant has posed several ingenious examples of constitutionally protected communications which could result in prosecution under section 18-9-111(1)(e), C.R.S. 1973 (1976 Supp.).[1] But defendant did not engage in any activity of that nature. Instead, his telephone calls are at the core of the privacy interests which section 18-9-111(1)(e) is designed to protect. This court would necessarily have to speculate to predict whether a prosecution of defendant under section 18-9-111(1)(e) for his speech in this case would cause others who might wish to engage in constitutionally protected activity to refrain from speaking because of a fear of subsequent prosecution under that same statute. Thus, the defendant may not employ the doctrine of overbreadth to strike down the statute with which he is charged. *Broadrick v. Oklahoma, supra,* at 615.

---

[1] For instance, defendant suggests that section 18-9-111(1)(e) could be used to prosecute a person who sold, by use of a telephone, medical textbooks which contain descriptions of ultimate sexual acts, a husband and wife discussing birth control over the telephone, or persons discussing scenes in a movie which depicted sexual activity. It is questionable whether these conversations would meet the requirement in section 18-9-111(1)(e) that the proscribed telephone conversations be made "with intent to harass, annoy, or alarm another."

180

## II.

Even though defendant may not attack section 18-9-111(1)(e), C.R.S. 1973 (1976 Supp.) on the basis of vagueness or overbreadth, we must still confront his contention that the statute is unconstitutional as applied to him. *Bigelow v. Virginia, supra.* Every medium of expression presents special First Amendment problems which must be examined in the light of the circumstances which are interwoven with the speech in issue. *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952); *Kovacs v. Cooper,* 336 U.S. 77, 97, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (Jackson, J., concurring).

Defendant contends that he cannot be convicted of harassment under section 18-9-111(1)(e) because the definition of the word "obscene" in that section does not incorporate the elements of "obscenity" which the United States Supreme Court required in *Miller v. California, supra.*[2]

It is apparent that section 18-9-111(1)(e) does not include either part "(a)" or part "(c)" of the test enunciated in *Miller v. California, supra,* for defining "obscenity," and the district attorney so concedes. But the defendant is in error in his assertion that the definition of obscenity as explicated in *Miller v. California, supra,* perforce must control the case before us. Although section 18-9-111(1)(e) uses the word "obscene" to describe the speech which is prohibited, the telephone harassment statute is clearly not designed to regulate the purveyance of "obscenity" as that word is used in *Miller v. California, supra.* Whatever the requirements of *Miller v. California, supra,* may be in a prosecution for alleged violations of law prohibiting published obscenity, those requirements are inapposite when the question is whether the state may prohibit unwanted verbal assaults on a person within the privacy of his or her own home.

The correlative rights of an importunate speaker and an unwilling listener have been considered in a number of cases.
"Although each case ultimately must depend on its own specific facts, some general principles have emerged. A State or municipality may protect individual privacy by enacting reasonable time, place, and manner regulations applicable to all speech irrespective of content. See Kovacs v.

---

[2] Before the state can obtain a conviction for violation of laws prohibiting obscenity, the trier of fact must determine:
"(a) whether 'the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest' . . . . (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work taken as a whole, lacks serious literary, artistic, political, or scientific value." *Id.* at 24.
The court gave further guidance in *Miller v. California, supra,* as to part "(b)":
"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." *Id.* at 25.

Cooper, supra; Cox v. Louisiana, 379 US 536, 554, 13 L Ed 2d 471, 85 S Ct 453 (1965); Adderley v. Florida, 385 US 39, 17 L Ed 2d 149, 87 S Ct 242 (1966). But when the government, acting as censor, undertakes selectively to shield the public from some kinds of speech on the ground that they are more offensive than others, the First Amendment strictly limits its power. See, e.g., Police Dept. of Chicago v. Mosley, 408 US 92, 33 L Ed 2d 212, 92 S Ct 2286 (1972); Fowler v. Rhode Island, 345 US 67, 97 L Ed 828, 73 S Ct 526 (1953); Kovacs v. Cooper, supra, at 97, 93 L Ed 513, 69 S Ct 448, 10 ALR2d 608 (Jackson, J. concurring). *Such selective restrictions have been upheld only when the speaker intrudes on the privacy of the home,* see Rowan v. Post Office Dept., 397 US 728, 25 L Ed 2d 736, 90 S Ct 1484 (1970), *or the degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure. . . .* As Mr. Justice Harlan cautioned:
"'*The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is . . . dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner.* Any broader view of this authority would effectively empower a majority to silence dissidents simply as a matter of personal predilections.' Cohen v. California, 403 US, at 21, 29 L Ed 2d 284, 91 S Ct 1780." *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 209-210, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975) (footnotes omitted) (emphasis supplied).

 The First Amendment does not extend to any person the right to use his power of speech as a battering ram to destroy the tranquility and repose of another person's home. *Breard v. City of Alexandria,* 341 U.S. 622, 644-645, 71 S.Ct. 920, 95 L.Ed. 1233 (1951).
"The ancient concept that 'a man's home is his castle' into which 'not even the king may enter' has lost none of its vitality, and none of the recognized exceptions includes any right to communicate offensively with another." *Rowen v. Post Office,* 397 U.S. 728, 737, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970).
*Accord, Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); *Lehman v. City of Shaker Heights,* 418 U.S. 298, 305, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) (Douglas, J., concurring); *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *Redrup v. New York,* 386 U.S. 767, 769, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967); *Kovacs v. Cooper, supra,* at 87.

This is not a case in which the victim would have been able to "avoid further bombardment of [her] sensibilities simply by averting [her ears]." *Cohen v. California, supra,* at 21; *Bolles v. People, supra.* A ringing telephone is an imperative which, in the minds of many, must be obeyed with a prompt answer. It is impossible for the recipient of the telephone call to know who is calling at any particular time. Once the telephone has

been answered, the victim is at the mercy of the caller until the call can be terminated by hanging up.

It is important to note that, in each of the cases cited above, the speech which was declared to be subject to punishment would have been protected by the First Amendment if it had been uttered in other contexts. Thus, the *content* of the speech in question is not the only factor to be considered.

"It may not be the content of the speech, as much as the deliberate 'verbal [or visual] assault' . . . that justifies proscription." *Erznoznik v. City of Jacksonville, supra,* at 210, n. 6.

The gravamen of the offense is the thrusting of an offensive and unwanted communication on one who is unable to ignore it. *Compare Bolles v. People, supra; cf. Ginsburg v. United States,* 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966). Thus, defendant's assertion that his communication to the victim was not "obscene" does not dispose of this case.

■ Instead, the question is whether section 18-9-111(1)(e) strikes the proper balance between defendant's need to communicate and the victim's right to privacy and autonomy. When the utility of defendant's speech, either to himself or to the community at large, *see Paris Adult Theatre I v. Slaton, supra,* and the absence of any necessity for him to communicate his thoughts in the manner which he chose, *see Kovacs v. Cooper, supra,* is weighed against the "essentially intolerable" invasion of the victim's "substantial privacy interests," which his telephone calls caused, it is apparent that the legislature has made a proper accommodation between the interests of defendant and those of his victim.

"[N]o mandate in our constitution leaves States and governmental units powerless to pass laws to protect the public from the kind of boisterous conduct that disturbs the tranquility of spots selected by people . . . for homes, wherein they can escape the hurly-burly of the outside business and political world . . . ." *Gregory v. Chicago,* 394 U.S. 111, 118, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969) (Black, J., concurring).

Accordingly, we reverse the ruling of the trial court and remand with directions to reinstate the charges against the defendant and for further proceedings not inconsistent with the directives contained in this opinion.

MR. JUSTICE CARRIGAN concurs as to Part I and specially concurs as to Part II.

MR. JUSTICE CARRIGAN specially concurring in Part II.

I respectfully concur with Part I of the majority opinion and in the result reached in Part II, but would prefer to reach the latter result by a more direct route.

In my view the conduct constituting the crime charged has no legitimate claim to First Amendment protection. It is plain, unadulterated obscenity intended to interfere with the victim's right to be left alone while protecting the perpetrator behind the anonymity of the telephone.

There is no element of political expression to be shielded here, as was the case in *Bolles v. People,* 189 Colo. 394, 541 P.2d 80 (1975). There the communication addressed the abortion issue which was the subject of vigorous public debate, and the defendant made no attempt to hide his identity. It is not even claimed that any element of political expression is involved here.

Nor is freedom of the press — in any form — involved. At most the claim is that constitutional guarantees of free speech include the right anonymously to invade another's privacy and disturb another's mental tranquility with obscene phone calls. There is no such constitutional right. Obscenity "is not within the area of constitutionally protected speech or press." *Roth v. United States,* 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498, 1507 (1957).

This case does not present the frequently encountered problem of drawing the line between what is obscene and what is not obscene. The utterances here were palpably obscene. Moreover, in the posture of this case, a motion to dismiss for facial unconstitutionality, the allegation of the information that the calls were obscene must be taken as true.

A civilized society has a right to protect its members against obscene assaults on privacy and peace of mind. The First Amendment simply does not apply, and therefore I perceive no point in the majority's protracted discussion of it.