The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Walter T. BRIDGES,
Defendant–Appellant.

No. 79SA438.

Supreme Court of Colorado.

Sept. 22, 1980.

Rehearing Denied Oct. 6, 1980.

As Modified On Denial of Rehearing
Dec. 15, 1980.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Susan P. Mele–Sernovitz, Asst. Atty. Gen., Denver, for plaintiff–appellee.

J. Gregory Walta, Colorado State Public Defender, Michael Heher, Deputy State Public Defender, Denver, for defendant–appellant.

DUBOFSKY, Justice.

Walter Tyler Bridges appeals his conviction for engaging in a riot, section 18–9–104, C.R.S.1973 (now in 1978 Repl.Vol. 8), on the grounds first, that the jury instructions failed to specify the culpable mental state necessary to convict him of the offense, and second, that the riot statute is unconstitutionally vague and overbroad. We find defendant's attack on the constitutionality of the statute unconvincing, but reverse defendant's conviction because the trial court improperly instructed the jury.

The charges against the defendant arose from his presence at a party in Widefield, Colorado on the evening of August 27, 1976. Several complaining witnesses, ready to leave the party, became embroiled in an argument with newly arrived partygoers including the defendant and his brother. A fight ensued, resulting in broken windows and bullet holes in the witnesses' automobile, bullet holes in a nearby house, and minor injuries to several participants.

Trial testimony concerning the identity of the persons who caused the damage and injuries conflicted, but several witnesses testified that the defendant hit one woman and threatened another with a handgun. There is, therefore, ample evidence that the defendant actively participated in the fight.

The defendant was convicted of engaging in a riot (section 18–9–104, C.R.S.1973); third–degree assault [section 18–3–204, C.R.S.1973 (1978 Repl.Vol. 8)]; and felony menacing [section 18–3–206, C.R.S.1973 (1978

Repl.Vol. 8)].[1]  He was sentenced to terms of two to eight years for rioting, one year for assault, and one to five years for menacing, the sentences to be served concurrently.

I.

The defendant on appeal asserts that committing the offense of engaging in a riot requires a culpable mental state and that the jury instructions were inadequate because they did not include a culpable mental state as an essential element of the crime. We agree.

■ The defendant did not object to the instructions at trial or in his motion for a new trial. However, where plain error or a defect affecting substantial rights appears in the record, we should consider it even though it is first raised on appeal. Crim.P. 52(b); *People v. Hardin*, Colo., 607 P.2d 1291 (1980); *People v. Morant*, 179 Colo. 287, 499 P.2d 1173 (1972). Therefore, we must determine the adequacy of the instructions given here.

■ Neither section 18–9–104 nor section 18–9–101(2), C.R.S.1973 (now in 1978 Repl.Vol. 8), the definition of "riot", prescribes a culpable mental state. Legislative silence on the element of intent in a criminal statute generally is not construed as an indication that no culpable mental state is required. The United States Supreme Court, interpreting federal legislation, has held that, by definition, a crime ordinarily requires the conjunction of an act and a culpable mental state. *United States v. United States Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978); *Morissette v. United States*, 342 U.S. 246, 72 S.Ct.

240, 96 L.Ed. 288 (1952). A culpable mental state is required if it was an element of the common law offense. *Morissette, supra.* Engaging in a riot was a crime at common law requiring *mens rea*, or guilty mind, to be criminally actionable. *State v. Dixon*, 78 Wash.2d 796, 479 P.2d 931 (1971); 54 Am. Jur.2d *Mobs and Riots*, §§ 1, 13 (1971). Thus, the requisite mental state may be implied from the statute, *cf. United States Gypsum, supra; Morissette, supra; People v. Naranjo*, Colo., 612 P.2d 1099 (1980); and its existence or non–existence is a question of fact for the jury. *Morissette, supra; People v. Washburn*, 197 Colo. 419, 593 P.2d 962 (1979).

■ We conclude that the mental state "knowingly" is implied by the statute and is required for the offense of engaging in a riot.[2]  *See* section 18–1–501(6), C.R.S.1973 (1978 Repl.Vol. 8).

■ In Instruction No. 8, the trial court told the jury that "[t]o constitute a crime there must be the joint operation of an act forbidden by law, and a culpable mental state." *Colorado Jury Instructions (Criminal)* 6:1. The same instruction defined both "specific intent" and "intentionally." The trial court limited the "specific intent" definition to the felony menacing charge, but it did not link "intentionally" to any of the crimes charged. Instruction No. 9 defined the words used in the riot charge. Instruction No. 10 set out the elements of engaging in a riot. However, the elements enumerated in Instruction No. 10 did not include a culpable mental state.[3]

The instructions here are fundamentally flawed.[4]  Because the elements of the of-

1. The defendant did not appeal his convictions for third–degree assault or felony menacing.

2. The People state that section 18–9–104(1) implicitly requires specific intent on the part of the actor. The defendant makes no representation as to the type of culpable mental state implicitly required by the statute.

3. Instruction No. 11 defined the terms used by the third–degree assault statute, and Instruction No. 12 set out the elements of third–degree assault, including "intentionally." Instruction

No. 13 defined the terms used by the felony menacing statute, and Instruction No. 14 defined the elements of felony menacing, including "specific intent."

4. We do not determine here that an instruction setting forth the elements of the crime is fatally defective if it does not include as one of the elements a culpable mental state. *See People v. Bridges*, Colo., 612 P.2d 1110 (1980). The instructions must be read and considered in their entirety. Clearly, however, better judicial

fense as set out in Instruction No. 10 omitted the appropriate culpable mental state, the jury was left with Instruction No. 8 requiring the joint operation of an act forbidden by law and a culpable mental state. Instruction No. 8, however, did not indicate what culpable mental state was appropriate for the jury to consider in joint operation with the elements of engaging in a riot as defined in Instruction No. 10.[5]

On this record, we conclude that the trial court failed to instruct the jury on all elements of the crime charged. *People v. Hardin, supra; People v. Archuleta*, 180 Colo. 156, 503 P.2d 346 (1972).

## II.

Because the issues may arise again if the defendant is retried, we turn to the defendant's constitutional challenges. The defendant contends that the vagueness of the statutes defining the offense of engaging in a riot, section 18–9–104 and section 18–9–101(2), deprived him of due process of law. *U.S.Const.* Amend. XIV; *Colo.Const.* Art. II, Sec. 25. He also asserts that the statutes are overbroad because they penalize conduct protected by the First Amendment. *U.S.Const.* Amend. I. The People argue that the statutes as applied to the defendant are not vague and that the defendant has no standing to challenge the statutes for overbreadth. We agree with the People; the defendant's contentions do not overcome the presumption that section 18–9–104 and section 18–9–101(2) are constitutional. *People v. Edmonds*, 195 Colo. 358, 578 P.2d 655 (1978).

Section 18–9–104 provides:

"(1) A person commits an offense if he engages in a riot. The offense is a class 4 felony if the actor employs a deadly weapon or destructive device in the course of rioting; otherwise it is a class 2 misdemeanor."

"Riot" is defined as:

"a public disturbance involving an assemblage of five or more persons which by tumultuous and violent conduct creates grave danger of damage or injury to property or persons or substantially obstructs the performance of any governmental function."

Section 18–9–101(2), C.R.S.1973.

A criminal statute may be vague if persons with common intelligence need guess at its meaning. *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *People v. Weeks*, 197 Colo. 175, 591 P.2d 91 (1979). To survive constitutional scrutiny the statute must adequately warn a defendant of what activities it proscribes and set out "explicit standards" for those who enforce it. *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *People v. Weeks, supra.* As we have construed sections 18–9–104 and 18–9–101(2) in part I of this opinion, they forbid knowingly engaging in "a public disturbance involving an assemblage of five or more persons which by tumultuous and violent conduct creates grave danger of damage or injury to property or persons . . . ." Here, the conduct was public and violent, the requisite number of persons were assembled and their collective conduct created a grave danger of damage and injury to property and persons. Because the statutory scheme gave the defendant clear warning that knowing participation in the conduct was forbidden and provides explicit standards to guide persons charged with its enforcement, the defendant lacks standing to attack sections 18–9–104 and 18–9–101(2) as unconstitutionally vague. *Broadrick v. Oklahoma, supra.*

The defendant also does not have standing to challenge sections 18–9–104 and

practice includes the appropriate culpable mental state as an element of the offense.

**5.** By contrast, the wording of Instructions Nos. 14 and 12 implied that the definition of specific intent in Instruction No. 8 was to be considered only in connection with Instruction No. 14 set-

ting forth the elements of felony menacing, and that the definition of "intentionally" in Instruction No. 8 was to be considered only with the elements in Instruction No. 12, third–degree assault.

18–9–101(2) as overbroad. The doctrine of overbreadth prevents the State, when it regulates conduct, from encroaching upon speech or assembly protected by the First Amendment which may be within reach of the statute. In First Amendment cases, traditional standing rules [6] are broadened to ensure that a statute does not create an unwarranted fear of prosecution, thus chilling participation in protected speech or assembly. *Broadrick v. Oklahoma, supra.* But standing to attack a statute is limited to only those defendants whose conduct is at the periphery of the activity proscribed by the statute. As we said in *People v. Weeks, supra* :

> "Those defendants whose speech is central to the interests which the statute seeks to protect and is clearly of a type regulated by the statute in question, cannot attack the statute as overbroad. They must demonstrate that the statute is unconstitutional as applied to them. *Broadrick v. Oklahoma, supra; Bolles v. People, supra.*"

197 Colo. at ——, 591 P.2d at 94.

 The defendant allegedly engaged in precisely the type of conduct the riot statute was intended to proscribe. *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *State v. Dixon, supra.* To invalidate the statutes as overbroad would require us to speculate as to their deterrent impact on hypothetical conduct significantly different from that involved in this case. Thus the defendant may not invoke the doctrine of overbreadth here.

 Neither do we find persuasive the defendant's bald statement that he asserts his own First Amendment rights. The First Amendment does not protect violent conduct. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); *Cantwell v. Connecticut, supra.* We uphold the constitutionality of the statutes.

---

**6.** One not personally adversely affected by an asserted constitutional defect is not entitled to attack the constitutionality of a statute. *People v. Stage,* 195 Colo. 110, 575 P.2d 423 (1978); *Veterans of Foreign Wars v. City of Steamboat Springs,* 195 Colo. 44, 575 P.2d 835 (1978); *People v. Blue,* 190 Colo. 95, 544 P.2d 385 (1975); *Bolles v. People,* 189 Colo. 394, 541 P.2d 80 (1975).

We reverse the conviction of the defendant for engaging in a riot and remand for further proceedings consistent with this opinion.

Judgment reversed.

HODGES, C. J., does not participate.