The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Henry Guadalupe **RIVAS**, Defendant–Appellant.

No. 00CA1948.

Colorado Court of Appeals, Div. I.

Aug. 14, 2003.

Ken Salazar, Attorney General, John J. Fuerst, III, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Julie Iskenderian, Deputy State Public Defender, Jason C. Middleton, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Henry Guadalupe Rivas, appeals the judgment of conviction entered upon a jury verdict finding him guilty of second degree assault and engaging in a riot. He also appeals the trial court's denial of his postconviction motion alleging ineffective assistance of counsel. We affirm.

Evidence at trial established the following facts. The victim and several of his friends were walking along a street when a van carrying defendant and several others drove by. The victim was a member of a gang, and defendant was a member of a rival gang. The groups yelled their gang names at each other. The van stopped, and a group of boys jumped out, including defendant. There was testimony that defendant got out of the van carrying a baseball bat.

As fights broke out, several girls who were with the victim's group ran away and hid. One fight involving the driver of the van took place in an alley. The main fight involved the victim and four or five occupants of the van, including the defendant. The victim testified that he picked up a large rock and was hit when he ran toward the van. There was testimony that the victim fell to the ground and the group continued to kick and hit him until he was unconscious. One witness testified that defendant hit the victim with a bat. The police recovered several shattered bottles, three or four large rocks, and blue and red bandanas at the scene. However, the police did not recover a baseball bat.

After a trial, a jury convicted defendant of the crimes charged.

## I.  Second Degree Assault

Defendant contends the jury instruction on second degree assault did not accurately reflect the charge or the law, thus violating his fundamental constitutional rights. We disagree.

When no contemporaneous objection is made to an asserted error, appellate review is limited to determining whether there is plain error. Plain error "casts serious doubt upon the basic fairness of the trial itself. . . ." *Wilson v. People,* 743 P.2d 415, 419–20 (Colo.1987).

A trial court must instruct the jury correctly on the law applicable to the case. *People v. Stewart,* 55 P.3d 107, 120 (Colo. 2002). "Failure to instruct properly on an element of a crime does not constitute plain error where that element is not contested at trial[.]" *People v. Cowden,* 735 P.2d 199, 202 (Colo.1987).

The second degree assault instruction given to the jury provided, in pertinent part:

> The elements of the crime of assault in the second degree with a deadly weapon are:
> 1.  That the defendant. . . .
> 3.  with the intent to cause bodily injury to another person,
> 4.  caused or *attempted to cause* such injury to any person,
> 5.  by means of a deadly weapon.

(Emphasis added.)

### A.  Attempt

Defendant argues that the jury instruction lessened the prosecution's burden of proof, requiring it only to prove that defendant attempted to commit second degree assault. We conclude there was no reversible error.

Our review is limited to plain error because defendant did not object to this jury instruction. *See Wilson v. People, supra.*

The People agree that the trial court improperly included the "attempted to cause" language in the instruction. The instruction given here followed the pattern jury instruction for second degree assault. *See* CJI–Crim. 10:08 (1983). However, in 1995, the second degree assault statute was amended to omit attempt. *See* Colo. Sess. Law 1995, ch. 240, § 18–3–203(1)(b) at 1251.

At trial, neither the prosecution nor the defense argued about whether defendant attempted to assault the victim. The disputed factual issue at trial was whether defendant was guilty of second degree assault as a principal or as a complicitor, not for having attempted to assault the victim. As noted, one witness testified that she saw defendant hit the victim with a baseball bat.

Further, at trial, defendant's theory of defense was mistaken identity. He did not dispute that the victim had been assaulted. Thus, defendant did not contest the attempt element at trial, and the attempt language in the assault jury instruction was surplusage under the circumstances. *See People v. Cowden, supra.*

In light of our disposition, we need not address defendant's related contentions that reversal is required because (1) the second degree assault charged in the information was broadened when the court instructed the jury on attempted assault; and (2) the trial court did not define "attempt" for the jury.

### B. Verdict

■ Defendant also contends that the verdict form for second degree assault failed to require the jurors to agree unanimously on a theory of culpability. In particular, he argues that, pursuant to the erroneous instruction on second degree assault, he was charged with assault based on four theories of culpability: (1) as the principal; (2) as one who made an attempt; (3) as a complicitor; and (4) as a complicitor to attempt. We are not persuaded.

■ "[W]hile the jury must unanimously agree on all the elements of a crime, the jury is not required to unanimously agree on the evidence or theory by which a particular element is established." *People v. Palmer,*

—— P.3d ——, ——, 2003 WL 21403220 (Colo.App. No. 01CA0937, June 19, 2003).

Here, the jury was specifically instructed that, "In order to reach a verdict, it is necessary that each juror agree to it. Your verdicts must be unanimous." Thus, the jury was not required to agree unanimously on a theory of culpability. *See People v. Palmer, supra.*

### C. Serious Bodily Injury

■ Defendant next contends the trial court erred in not defining "serious bodily injury" to supplement the instruction defining the term "deadly weapon." We do not agree.

Defendant relies on the notes on use in the Colorado Criminal Jury Instructions, which state that when the deadly weapon instruction is given, "it should be followed by Instruction 5:01–5(23), Serious Bodily Injury." CJI–Crim. 5:01–5(10) (1993 Supp.).

However, as noted, defendant did not object to the second degree assault instruction at trial. Additionally, at trial, defendant did not request a definition of serious bodily injury, nor did he contest that the victim sustained serious bodily injury. Evidence was presented that the victim was knocked unconscious, suffered blunt trauma to the face and head, and complained of pain in his head and ribs.

Because defendant did not contest that the victim suffered serious bodily injury, any failure to instruct the jury on that point did not amount to plain error. *See People v. Cowden, supra.*

### II. Culpable Mental State

Defendant next contends the jury instructions on engaging in a riot and second degree assault erroneously limited the application of the mental state requirements in violation of his constitutional right to due process of law. Again, we disagree.

When a statute includes as an element of the offense a specific culpable mental state, "that mental state is deemed to apply to every element of the offense unless an intent

to limit its application clearly appears." Section 18–1–503(4), C.R.S.2002.

## A. Engaging in a Riot

Defendant contends that the jury instruction on engaging in a riot erroneously limited the application of the culpable mental state of "knowingly" to engaging in a riot, and did not apply the mental state to the term "employing a deadly weapon." We find no error.

At the outset, we note that the jury instruction given here for engaging in a riot followed the language of the pattern jury instruction. *See* CJI–Crim. 30:03 (1983). Here, the elemental instruction required, in pertinent part, that defendant "3. knowingly engaged in a riot, 4. and employed a deadly weapon during the course of rioting."

In *Whitaker v. People*, 48 P.3d 555, 558–59 (Colo.2002), the supreme court held that the culpable mental state of knowingly did not apply to the quantity of drugs the defendant distributed, manufactured, dispensed, sold, or possessed under the controlled substance statute, § 18–18–405, C.R.S.2002. In that statute, the offense and punishment levels are set out in separate provisions. The *Whitaker* court concluded that the statutory structure demonstrated the General Assembly's intent to separate sentencing factors, such as drug type or quantity, from the elements of the crime.

Engaging in a riot is committed under § 18–9–104(1), C.R.S.2002, when a person engages in a riot, a term defined by statute. "Riot" means "a public disturbance involving an assemblage of three or more persons which by tumultuous and violent conduct creates grave danger of damage or injury to property or persons or substantially obstructs the performance of any governmental function." Section 18–9–101(2), C.R.S.2002.

■ The culpable mental state of knowingly applies to the offense of engaging in a riot. *People v. Bridges*, 620 P.2d 1 (Colo.1980). The statute further provides that engaging in a riot is a class 4 felony if, among other things, the actor employs a deadly weapon in the course of rioting. Otherwise, the offense is a class 2 misdemeanor. Section 18–9–104(1).

■ The engaging in a riot statute defines the offense in the first sentence. The second sentence sets forth the applicable punishment levels. *See* § 18–9–104(1). As did the supreme court in *Whitaker*, we conclude this statutory structure demonstrates that the General Assembly did not intend that a culpable mental state apply to the sentence enhancing factors, including employing a deadly weapon. *See* § 18–9–104(1); *Whitaker v. People, supra.*

Accordingly, we find no error.

## B. Second Degree Assault

Defendant further contends that the second degree assault instruction erroneously limited the intentional mens rea to element 4, which required the jury to find he acted with intent to cause bodily injury to another person. The instruction did not specify that the mental status of "intentionally" applied to each element of the offense. We agree the instruction was deficient, but conclude there was no plain error.

As relevant here, "A person commits the crime of assault in the second degree if: ... [w]ith intent to cause bodily injury to another person, he or she causes such injury to any person by means of a deadly weapon." Section 18–3–203(1)(b), C.R.S.2002.

■ In jury instructions, when the mens rea requirement is offset from the other elements, it modifies all succeeding conduct elements. *See People v. Rodriguez*, 914 P.2d 230, 272 (Colo.1996).

■ In ascertaining whether there was plain error, courts must consider the jury instructions as a whole to determine whether the jury was properly advised as to the law. "The failure to include the culpable mental state in the instruction defining the offense is not plain error as long as the instructions, read and considered in their entirety, clearly instruct the jury as to the required mens rea." *People v. Caldwell*, 43 P.3d 663, 671 (Colo.App.2001).

Here, in addition to the second degree assault instruction, the jury was instructed on the definition of intentionally, which tracked the statutory language of § 18–1–

501(5), C.R.S.2002. Specifically, the instruction stated, "A person acts 'intentionally' when his conscious objective is to cause the specific result proscribed by the statute defining the offense. It is immaterial whether or not the result actually occurred."

■ While the better practice would be to offset the mens rea requirement so that it modifies all the conduct elements, we nevertheless conclude that the jury instructions as a whole adequately informed the jury as to the required culpable mental state of second degree assault. *See People v. Caldwell, supra.*

Accordingly, we find no plain error in the jury instructions given here.

### III. Juror Question

■ Defendant contends the trial court denied him due process protections by failing to respond unequivocally to the jurors that they could convict him only if he intended to commit the crime charged, not any offense. Again, we disagree.

Our review is again limited to plain error because defendant did not object to the trial court's response to questions from the jury.

■ If a jury asks for information during deliberations, the trial court should provide it with an additional instruction unless: (1) the jurors can be adequately informed by directing their attention to the original instructions; (2) the question concerns matters not in evidence or does not pertain to the law of the case; or (3) the question would require the court to express an opinion on the factual matters that the jury should determine. *Leonardo v. People,* 728 P.2d 1252, 1255 (Colo.1986).

Here, defendant argues that the trial court's response to the jurors' questions did not adequately inform them of the exact crimes charged. During deliberations, the jury sent two sets of questions to the court. The first set read, "On [the elemental instruction for complicity], can we get clarification on #3 and 4, specifically what constitutes intent to promote or facilitate. What is *intent?* What is definition of *promote and facilitate.* What size was the van (minivan, full-size van etc.)." (Emphasis in original.) The second set of questions stated:

[Complicity instruction] We need clarification of intended in #3 and intent to promote in #4[.] Does the intent to commit the crime specify the exact assault charge or can it mean to commit a crime in general? Does intent to commit a crime constitute intending to commit the crime as charged?

The trial court responded as follows:

1. Regarding the definition of intent, you are referred to [the culpable mental state instruction, which defined intentionally].

2. Regarding the definition of *promote and facilitate,* you are instructed that [the] meaning of these terms is that of their common everyday meaning.

3. Regarding the size of the van, you are instructed that you must rely on your recollection of the testimony.

4. Regarding your Question 2, you are referred to [the culpable mental state instruction, which defined intentionally].

(Emphasis in original.)

The jury's questions reflected a general lack of understanding of intent. Thus, the trial court properly referred the jury back to the original jury instructions. *See Leonardo v. People, supra.*

### IV. Complicity Instruction

Defendant also contends the trial court erroneously instructed the jury on complicity because the court, not the prosecutor, advocated inclusion of a complicity instruction and thus violated his right to due process of law. Again, we do not agree.

#### A. Trial Court's Comments

■ Defendant argues that reversal is required because during the conferences on jury instructions, the court, not the prosecutor, advocated going forward against defendant on a complicity theory. We are not persuaded.

■ "[C]ourts must meticulously avoid any appearance of partiality, not merely to secure the confidence of the litigants immedi-

ately involved, but to retain public respect and secure willing and ready obedience to their judgments." *People v. Hrapski*, 718 P.2d 1050, 1054 (Colo.1986).

Here, during the conference on jury instructions, the trial court stated, "Next we need, I'm not telling you how to try your case, but [a] complicity instruction I think might be the thing to do here. That's your choice. If you don't want it, don't." The court then moved on to the other instructions. Defendant did not object to the court's comment.

A fair reading of the trial court's comment is that it was made in passing during the jury instruction conference. Additionally, the trial court also suggested to defense counsel that duress was a possible defense and suggested language to defense counsel for a theory of the case instruction before he had drafted one. Based on our review of the record, we conclude there was no partiality or appearance of partiality by the trial court.

Therefore, we find no reversible error under the circumstances presented.

### B. Failure to Charge Complicity

■ Defendant maintains he was deprived of any opportunity to defend himself against a complicity theory because it was not charged in the information. He also argues that he was deprived of an opportunity to raise the defense of defense of others. We are not convinced.

We are limited to plain error review because defendant did not raise these objections at trial.

■ Complicity is not a separate offense; rather, it is a legal theory of liability. *Palmer v. People*, 964 P.2d 524, 528 (Colo.1998).

Here, defendant concedes that, "While Colorado cases have previously rejected that complicity must be charged, these cases ultimately rely on the case of *Mulligan v. People*, 68 Colo. 17, 189 P. 5 (1919), and the [d]efendant urges this court to reconsider that [1919] opinion." Defendant also relies on *Wright v. State*, 101 Nev. 269, 701 P.2d 743 (1985), for the proposition that reversal is required where the state charges and pro-

ceeds against the defendant as the principal, but the jury is instructed on aiding and abetting.

Even if we were to conclude that *Wright* is persuasive authority, we are bound to follow the precedent established by the supreme court in *Mulligan*.

Further, at trial, defendant's theory of defense was mistaken identity. Defendant would have presented the jury with inconsistent theories if, on the one hand, he argued mistaken identity, and, on the other hand, he argued that if he was involved, he was acting in defense of others. The defense of mistaken identity was not viable if defendant was the principal or a complicitor.

Thus, we find no error.

### C. *Apprendi* Violation

Defendant contends that giving the complicity instruction violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because the fact of accomplice liability increases the penalty for a crime beyond the prescribed statutory maximum, and therefore, it must be charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt. Again, we disagree.

In *Apprendi*, the Supreme Court stated, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey, supra*, 530 U.S. at 490, 120 S.Ct. at 2362–63, 147 L.Ed.2d at 455.

■ However, contrary to defendant's contention, accomplice liability does not increase the penalty for a crime; complicity is only a theory of liability. *See Palmer v. People, supra*. Accordingly, *Apprendi* does not apply.

### V. Engaging in a Riot

Defendant further contends the trial court erroneously allowed the jury to find him guilty of engaging in a riot as a principal or a complicitor. Once again, we do not agree.

## A. Sufficiency of the Evidence

Defendant maintains his conviction for engaging in a riot must be vacated because there was insufficient evidence presented to support the conclusion, required by statute, that more than one person was at grave risk of danger or injury. We disagree.

When determining a challenge to the sufficiency of the evidence, appellate courts consider whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support the conclusion by a reasonable person that the defendant is guilty of the offense charged beyond a reasonable doubt. *People v. Beatty*, — P.3d —, —, 2003 WL 548705 (Colo. App. No. 00CA2090, Feb. 27, 2003).

■ Nevertheless, an appellate court may not substitute its judgment for that of the jury and reweigh the evidence or the credibility of witnesses. "However, more than a modicum of evidence is required to prove an element beyond a reasonable doubt." *People v. Mandez*, 997 P.2d 1254, 1263 (Colo.App.1999).

■ Here, defendant argues that there was no evidence to support the conclusion that anyone besides the named victim was at grave risk or in danger of injury. On the contrary, one witness testified that he saw a second fight in a nearby alley involving the driver of the van and one of the people in the victim's group. One of the girls in the victim's group testified she was chased by a person in the van who threw a large beer bottle at her. Additionally, another girl testified that when she was assisting the victim, someone said to her that he was going to kill the victim and she would be next.

Therefore, considering the evidence in the light most favorable to the prosecution, we conclude that a reasonable juror could have concluded that more that one person was at grave risk of danger or injury. *See People v. Beatty, supra; People v. Mandez, supra.*

## B. Number of People

■ Defendant also contends that the complicity instruction erroneously reduced the prosecution's burden of proof for the crime of engaging in a riot. We find no error.

Our review is limited to plain error because defendant did not object.

■ Generally, all jury instructions must be read and considered as a whole, and there is no reversible error if they adequately inform the jury of the law. *People v. Galimanis*, 944 P.2d 626, 630 (Colo.App.1997).

Here, defendant argues that although engaging in a riot requires at least three people, the jury might have found that fewer than three people participated in the riot because the complicity instruction contained the phrase "another person."

However, reading the complicity instruction in conjunction with the elements instruction for engaging in a riot, we conclude the jury was instructed that complicity liability attaches where the complicitor has aided, abetted, advised, or encouraged one of three or more people engaging in a riot. Additionally, the jury was instructed that (1) it "must follow all of the rules" as explained by the court; (2) "[n]o single rule describes all the law which must be applied"; and (3) "the rules must be considered together as a whole."

Thus, the jury instructions as a whole adequately informed the jury of the law. *See People v. Galimanis, supra.*

## VI. Prior Criminality

Defendant contends he was denied his rights to due process and a fair trial because the prosecutor unfairly elicited evidence of his prior criminality and engaged in repeated misconduct during closing argument. We disagree.

## A. Officer's Testimony

■ A trial court has broad discretion in admitting evidence of other crimes, wrongs, or acts for a proper purpose. *Masters v. People*, 58 P.3d 979, 996 (Colo.2002). While CRE 404(b) excludes evidence of a person's other crimes, wrongs, or acts to establish his or her character for the purpose of showing that the person acted in conformity with that character, such evidence may be

admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *People v. Thompson,* 950 P.2d 608, 614 (Colo.App.1997).

In response to a question whether defendant admitted gang membership, the investigating officer testified, "It was a long time ago. It was a crime. It was an incident I contacted him for, and he was dressed in gang attire with another individual he was with. And we asked him what gang he was claiming. And that's when he said '18th Street.'"

Defendant did not object to this testimony. Thus, our review is limited to plain error.

■ Here, the investigating officer's statements were ambiguous, vague, and brief and did not even state that defendant had committed a crime. Thus, there was no error.

### B. Prosecutorial Misconduct

Defendant further contends the prosecution deprived him of his right to a fair trial and trial by a fair and impartial jury by its repeated misconduct during closing and rebuttal arguments. Specifically, he asserts the prosecutor improperly: (1) stated he believed defendant was guilty; (2) vouched for witness credibility; (3) appealed to the jury's passion and prejudice; (4) mischaracterized the evidence; and (5) argued facts not alleged. Once again, we disagree.

■ A prosecutor may argue the facts in evidence and reasonable inferences from those facts. *People v. Williams,* 996 P.2d 237, 243–44 (Colo.App.1999). However, a prosecutor may not assert his or her personal opinion about the guilt of a defendant or the truthfulness of the witnesses. *People v. Dunlap,* 975 P.2d 723, 760 (Colo.1999). Courts evaluate allegations of improper argument by a prosecutor in the context of the argument as a whole and in the light of the evidence presented. *People v. Davalos,* 30 P.3d 841, 844 (Colo.App.2001).

Here, defendant alleges various remarks by the prosecutor during closing argument were improper. Because defense counsel did not object to these statements, our review is once again limited to plain error.

■ Defendant first asserts the prosecutor improperly expressed his personal belief as to defendant's guilt by asking the jury to return a guilty verdict, stating, "'cause I believe the evidence has been proven beyond a reasonable doubt." However, this statement refers to the evidence, not defendant's guilt. Thus, considering the argument as a whole and in light of the evidence, we conclude it does not constitute plain error.

■ Second, defendant maintains the prosecutor improperly vouched for witnesses' credibility by stating (1) "Oliver was honest with you, he didn't remember a whole lot"; and (2) the witnesses stories had "slight discrepan[cies], but were consistent, that speaks of honesty. And I think that's what you have here from the witnesses that you did hear from, from the State." However, these comments related to reasonable inferences as to the credibility of witnesses. Therefore, these comments were proper.

■ Third, defendant argues that, during rebuttal argument, the prosecutor mischaracterized "critical evidence" by stating that a witness recalled telling police she saw defendant hitting the victim. However, the record reflects that after the witness said she did not remember making such a statement to the police, she agreed that her memory was better on the night of the assault. Thus, the prosecutor's statement was a fair comment on the evidence.

■ Fourth, defendant alleges the prosecution improperly played on the sympathies of the jury by arguing that it was intimidating for the witnesses to testify and asking the jury to consider the ramifications of testifying. Specifically, the prosecutor stated:

Now if you think that's intimidating when you are walking along the street and see guys coming at you with beer bottles and bats, how do you think it was to come in here yesterday and sit in front of a group of strangers and tell your story again? What are you looking at? What is going to happen the next time you walk down the street and some 18th Streeters see you?

No, this was chaotic, and this was scary, but the one thing that never changed [was] all three of those girls' testimony.

While it was inappropriate for the prosecutor to comment on the ramifications of testifying, this comment was brief and made in the context of discussing the evidence. Therefore, it does not rise to the level of plain error.

■ Finally, defendant maintains the prosecutor improperly argued that the victim was beaten with objects other than those listed in the information, including a fist, foot, beer bottle, or chain. However, the prosecution had consistently argued that the evidence showed defendant hit the victim with a baseball bat. To the extent that the jury could have relied on another object as a deadly weapon, this was at most a simple variance of the offense listed in the information and not a basis for reversal. *See People v. Rodriguez, supra,* 914 P.2d at 257.

Accordingly, we find no plain error under the circumstances presented.

## VII. Cumulative Error Doctrine

Defendant contends the combined errors deprived him of his fundamental constitutional rights and require reversal of his convictions. Once again, we disagree.

■ The cumulative error doctrine applies only if the trial court committed numerous errors, and mere assertions of error by the defendant are insufficient. *People v. Rivers,* 727 P.2d 394, 401 (Colo.App.1986).

Here, we have found three errors based on defendant's allegations. However, these errors are insufficient to warrant reversal under this doctrine. Under these circumstances, there was no cumulative error.

## VIII. Ineffective Assistance of Counsel

Finally, defendant contends he must be granted a new trial because he was denied his right to effective assistance of counsel. Again, we do not agree.

Courts use a two-prong test to determine claims of ineffective assistance of counsel. First, a defendant must show that trial counsel's performance was deficient because it fell below the level of reasonably competent assistance. Second, the defendant must show that the deficient performance prejudiced the defense, resulting in a reasonable likelihood that, absent counsel's errors, the outcome would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *People v. Fulton,* 754 P.2d 398 (Colo.App.1987).

■ However, the court can determine an ineffective assistance of counsel claim solely on the basis of prejudice. If the defendant is unable to establish prejudice, the court does not need to determine whether there was deficient performance by counsel. *People v. Naranjo,* 840 P.2d 319, 324 (Colo. 1992).

Here, defendant filed a postconviction motion for a new trial asserting ineffective assistance of counsel. Defendant alleged that his trial counsel failed to investigate the case fully by not contacting witnesses who said they were at the scene of the crime and were willing to testify that defendant was not involved in the assault.

After a hearing, the trial court denied the motion. The trial court applied the test in *Strickland v. Washington, supra,* and found there was no prejudice to defendant. It further found that one of the eyewitnesses may have given testimony favorable to defendant, but his testimony was self-contradictory and he had a prior felony conviction. The court concluded that there was not a reasonable probability that his testimony would have changed the outcome of the trial.

At the hearing, defendant, one of the four alleged eyewitnesses, and the investigating officer testified. Defendant testified that he told his attorney he wanted to call the four eyewitnesses and his attorney did not contact them. The eyewitness testified that (1) he was at the scene on the night of the incident; (2) defendant did not get out of the van; and (3) defendant's attorney never contacted him. The witness also testified that he had felony convictions.

The investigating officer testified that the eyewitness told him that defendant got out of the van. He also testified that he had con-

tacted two of the other alleged witnesses, who told him they were not present during the fight. Finally, the investigating officer testified that the name of the fourth eyewitness never came up during the investigation.

Thus, the record supports the trial court's ruling. Several witnesses testified at trial that defendant had gotten out of the van. Additionally, the eyewitness presented by defendant had previously told the investigating officer that he was not present when the fight took place. Therefore, the eyewitness's testimony was impeachable on multiple grounds.

Because defendant has not established prejudice, we need not consider whether defense counsel's performance was deficient. *See People v. Naranjo, supra.*

Accordingly, we find no reversible error.

The judgment and order are affirmed.

Judge KAPELKE and Judge LOEB concur.