No. 17,320.

PEOPLE EX REL. DUNBAR, ATTORNEY GENERAL
*v.* DENVER DISTRICT COURT.
(268 P. [2d] 1098)

Decided March 15, 1954.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank A. Wachob, Deputy, Mr. Robert S. Wham, Assistant, for petitioner.

Messrs. Galligan & Foley, for respondents.

Mr. Justice Knauss delivered the opinion of the Court.

This is an original proceeding in which the Attorney General, on behalf of the People of the State of Colorado, seeks a writ in the nature of prohibition against the District Court in and for the City and County of Denver, Colorado, and Joseph J. Walsh, as a judge thereof, to prohibit further proceedings in a certain cause pending in said court. An alternative writ was issued requiring respondents to show cause why the writ should not be made permanent. The case is now before us for determination upon the petition, the return and answer thereto.

The facts which give rise to this proceeding are set forth in the pleadings and the exhibits thereto attached. From these it appears that on August 20, 1953 an action was filed in the Denver District Court by United Workers for the Blind in Colorado, Inc., and Hazel E. Richards, a taxpayer, on their own behalf and on behalf of all other persons similarly situated, as plaintiffs, against Ruth DaVolt, individually and as Executive Director Colorado Industries for the Blind; the State Board of Industries for the Blind (hereinafter referred to as the Board); A. R. Schrader, Jacob S. Schey, Alexander M. Lukens, Pete Campbell and Walter A. Woods, individually and as members of the said State Board; James A.

Noonan, as Controller of the State of Colorado; Homer F. Bedford, individually and as State Treasurer; Earl E. Ewing, individually and as Auditor of the State of Colorado; and the sureties on the official bonds of the defendants DaVolt, Bedford and Ewing.

We summarize the contents of plaintiffs' thirteen page mother hubbard complaint, which consists largely of legal conclusions and accusations against certain defendants, as follows: That plaintiff, United Workers for the Blind of Colorado, Inc., is a nonprofit corporation organized in 1917 "for the purpose of promoting in every feasible way, the industrial, social, educational and economic welfare of the blind and partially blind people in this state," and is presently so engaged; that plaintiff Hazel E. Richards in addition to being a taxpayer "is personally interested in the subject matter of this action"; that the defendants DaVolt, the Board, its members and agents have "negligently conducted the affairs of the Colorado Industries for the Blind"; that as a result of such negligence "Plaintiffs have suffered great and irreparable damage and injury." Then follow allegations that the defendant DaVolt "alienated and otherwise disposed of a substantial amount of property and funds belonging to" the Industries, and that she filed with the State Controller false, fraudulent and deceitful reports covering the operation of the Industries for the fiscal years 1951-52 and 1952-53; that DaVolt "has covered or attempted to cover some of her transactions by bribing certain employees of the State Auditor's office," and that the audits of the accounts and assets of the Industries made by the State Auditor were "not conducted in accordance with accepted accounting principles," and if same had been "properly conducted" shortages in inventories would have been discovered; that defendant Noonan is State Controller and as such "has the legal duty of approving or disapproving commitment vouchers authorizing expenditures involving the Colorado Industries for the Blind."

Plaintiffs seek damages against DaVolt, the Board and its members in the sum of $100,000; against Bedford as State Treasurer in the sum of $60,000; against the surety on his official bond in the sum of $30,000; against Earl E. Ewing, as State Auditor, in the sum of $30,000, and a like amount against the surety on his official bond, and against the surety on the official bond of DaVolt in the sum of $2,000, this apparently being the penal sum of her bond. Plaintiffs seek no money judgment against defendant Noonan.

Plaintiffs also pray for an order restraining and enjoining all defendants "from in any manner expending, disbursing, alienating, pledging, encumbering, or in any way disposing of or in any manner approving the disbursements, encumbering or disposal of any of the funds, records, property, or other assets belonging to or connected with or pertaining to the workshop and manufacturing division of the Colorado Industries for the Blind, and from engaging in the purchase or borrowing or loaning of any property or equipment or merchandise for, on behalf of, or in connection with the workshop and manufacturing division program of the Colorado Industries for the Blind."

Plaintiffs also ask for the appointment of a "master or referee to make a complete audit of the affairs and transactions of the workshop and manufacturing divisions and vending stand programs of the Colorado Industries for the Blind."

By Court order, issued upon the filing of the complaint, a temporary restraining order was issued against defendants, pursuant to which all funds of these divisions of the Colorado Industries for the Blind were impounded. By Court Order the Board, Ruth M. DaVolt, its executive director, the State Controller and the State Auditor were by subpoenae ordered to produce certain official inventories, audits, reports, books and documents in said District Court.

On September 2, 1953 these state officials, the Board

and its members, and defendant DaVolt filed a motion to dismiss said action based, among other grounds, on the following: "that the complaint does not state a claim against these defendants or at all; that the court lacks jurisdiction over the subject matter." Like motions to dismiss were filed by the sureties on the bonds of the state officials and agents.

On October 6, 1953, plaintiffs filed a motion for appointment by the court of an independent auditor to examine and report on the condition of the books, accounts and assets of the Industries. On November 13, 1953, the trial judge overruled defendants' motion for dismissal of the action, and on the same day, over objection by defendants, entered his order appointing Ralph B. Mayo and Company as a master or referee to make a private audit and accounting of the books, transactions and affairs of the Industries, as prayed by plaintiffs. This original proceeding was instituted immediately after entry of the order last mentioned.

It is obvious that the Colorado Industries for the Blind is under the Executive Department of the state government, created to discharge a needed function on behalf of some of our citizens who may be benefited through its assistance. It is financed by the state; its transactions and accounts are by statute to be audited by the state auditor. Its funds are disbursed, as are other state funds, through the state treasurer. The officers and agents of the state charged with the operation and supervision of this department of the state, are accountable to those who by statute are placed over them to supervise their actions, and to the General Assembly.

The public corporation known as the Colorado Industries for the Blind, its officers and agents, are by law accountable to the Governor, and if there be mismanagement it may be corrected when reported to him by the Director of Public Institutions (Section 11 (f) (3), chapter 3, 1935 C.S.A., as amended by section 3, chapter

208

70 S.L. Colo. 1951), or by the state auditor (Section 43 (b) (4), chapter 2, S.L. Colo. 1941.) If appropriations made by the General Assembly are not wisely spent, that body can remedy such situation as a legislative matter when it is presented. If the affairs of the Industries are "negligently" conducted by the Board in charge of its affairs, the Director of Public Institutions and the Chief Executive are charged with the duty of remedying the condition. Section 6, chapter 90, S.L. Colo. 1941 limits the right of the Board to sue and its liability to suit "in the matter of contracts." These plaintiffs do not in any way attempt to qualify themselves as contractors with this public corporation.

It is obvious that the plaintiff corporation is not a taxpayer, but a nonprofit corporation organized for social and altruistic purposes. As such it is not qualified as a plaintiff in an action such as we are here considering. Hazel E. Richards, the other plaintiff, is a taxpayer according to the allegations of the complaint.

■ One who seeks relief from the courts for an alleged breach of duty imposed on public officers by statute, must show that he has exhausted the means available to him through the executive officials of the state to obtain the relief he demands for the benefit of himself and others in like situation.

The action and orders of respondents in the instant case overlook the provisions of Article III of our Constitution, and are an attempt to control, through judicial process, the power and discretion of officers and agents of the state within the Executive Department.

If we were to dignify the complaint herein by conceding that its allegations even remotely state a claim upon which plaintiff Richards could maintain the instant action, we must also presume that every executive officer of the state will act in accordance with law and his oath of office, and in the absence of a showing that the proper administrative authority has refused to act in the prem-

ises, courts may not invade the precincts of the executive department of our government.

We said in *State of Colorado v. Colorado Postal Telegraph-Cable Co.*, 104 Colo. 436, 91 P. (2d) 481: "The members of the legislative branch of the government and the chief executive are obligated by the same oath as the judges of the courts to support the Constitution of the State of Colorado, by authority of which not only the judicial, but also the legislative and executive departments of the state government exist; and under which their powers are fixed and exercised and their obligations defined and performed."

Normally, even after such showing of refusal, such a conglomeration of asserted claims as appear in this complaint would be properly separated and the worthless parts eliminated on proper action in the trial court, affording all parties ample protection to come here by writ of error.

■ Courts have authority by prohibition to supervise the execution of the laws, not merely by keeping inferior tribunals within their proper jurisdiction, but also by enforcing a correct execution of the laws.

What plaintiffs claim against the State Treasurer, and State Controller, other than injunctive relief, cannot be ascertained from the record; the only allegation against the State Auditor is that some of his deputies did not make audits in "accordance with accepted accounting principles;" the claim against the Board and its members is that they "negligently" conducted the affairs of the Industries and that they and defendant DaVolt filed untrue reports with state officers; that DaVolt has alienated and otherwise disposed of a "substantial amount of property and funds" belonging to the Industries, and that she bribed "certain employees" of the auditor's office. This latter accusation does not form the basis for an action such as we are considering, but attempts to state an offense cognizable as a crime. On the vague, indefinite and uncertain allegations of this complaint,

plaintiffs ask for damages aggregating more than One hundred thousand dollars, and an injunction the effect of which is to restrain the operation of this agency.

■ After we eliminate the chaff from this complaint, we find little, if any, substance remaining. What is left is the demand of plaintiff Richards that the trial court invade the executive department of this state through judicial process. Plaintiff Richards says she "has a personal interest" in the case, and it appears to us that she is using this action as a fishing expedition in an attempt to obtain some facts or figures which might bolster her vague, indefinite, general and uncertain charges and accusations, some of which savor of libel. We do not look with favor on pot-shot accusations, stated as these are, in such general and uncertain language. Normally, facts upon which a complaint is to be based, should be ascertained before the action is commenced.

By its order of November 13, 1953, the trial court in effect set aside the constitutional and statutory requirements surrounding offices within the Executive Department of the state, and usurped the prerogatives of state officials, the Colorado Industries for the Blind, the members of its Board and its Executive Director, and handed them over, in part at least, to the independent auditor. If the independent audit should show an operating loss, what will the trial court do about it?

■ While permitting this conglomeration of charges and accusations to stand against the defendants, the trial court directed the accredited state official whose duty is to make this audit, the Board and its agents, to submit their records to this independent auditor, and these representatives of the executive department of our state are subjected to the trouble, harassment and inconvenience which must necessarily follow such action. This interference by the judicial department with the executive department is, we think, of great public importance and justifies us in prohibiting its continuance. It may result in confusion, if not demoralization, of the Indus-

tries, and perhaps other agencies within the Executive Department of the state.

Writ made permanent.

MR. JUSTICE CLARK not participating.

MR. CHIEF JUSTICE STONE concurs in result.