Donald Earl WILLIAMS, Petitioner,

v.

CITY AND COUNTY OF DENVER,
Respondent.

No. C–1691.

Supreme Court of Colorado,
En Banc.

Jan. 19, 1981.

Arthur M. Schwartz, P. C., Arthur M. Schwartz, and Neil Ayervais, Denver, for petitioner.

Max P. Zall, City Atty., Robert M. Kelly, John L. Stoffel, Jr., Asst. City Attys., Denver, for respondent.

ERICKSON, Justice.

We granted certiorari to review constitutional issues relating to the validity of the Denver Sign Code, *Denver Revised Municipal Code* 613, *et seq.* Petitioner, Donald Earl Williams, seeks reversal of his conviction for violation of *Denver Revised Municipal Code* 611.2–1(7) and 613.3–6(4), and asserts that the Denver Sign Code is unconstitutional.[1] The trial judge held that Williams maintained seven (7) signs in violation of section 613.3–6(4), which permits only three (3) signs, and that Williams failed to obtain a permit for those window signs that were in excess of the number allowed by the ordinance in violation of section 611.2–1(7). *See also, Denver Revised Municipal Code* 613.2–1(6).[2]

On appeal from the county court, the Denver Superior Court affirmed Williams' conviction and simultaneously upheld the constitutionality of those sections of the Code which Williams challenges. We affirm.

The crux of Williams' constitutional challenge is that the definition of the word "sign" in the ordinance is unconstitutionally vague and overbroad. *Denver Revised Municipal Code* 619.396. He contends that his constitutional right of free speech and his right to due process of law, guaranteed by the First and Fourteenth Amendments of the United States Constitution and by Article II, Sections 10 and 25 of the Colorado Constitution, have been violated. The pertinent part of the ordinance provides:

"Sign: A sign is any object or device or part thereof situated outdoors or indoors which is used to advertise or identify an object, person, institution, organization, business, product, service, event or location by any means including words, letters, figures, designs, symbols, fixtures, colors, motion illumination or projected images. Signs do not include the following: (1) flags of nations, or an organization of nations states, and cities, frater-

1. *Denver Revised Municipal Code* 611.2–1(7) provides: "No sign shall be erected, altered or maintained until a zoning permit therefor shall have been issued by the Department of Zoning Administration except in those instances where the requirement for a zoning permit is expressly waived."

*Denver Revised Municipal Code* 613.3–6(4) provides: "Permitted Maximum Number. Ground Level Uses by Right With Street Frontage for Each Separate Building. Each Use by Right may have three for each street front of the Use by Right plus one additional sign for each 100 feet of street frontage in excess of 200 feet."

Williams was also charged with violating *Denver Revised Municipal Code* 613.3–6(5), which proscribes the permitted maximum sign area. The trial court found that there was a reasonable doubt as to the amount of square footage being utilized in Williams' signs, and held that he was not guilty of that specific charge.

2. The record indicates that the signs were painted on the window. *Denver Revised Municipal Code* 619.482, defines window sign as: "A sign which is applied or attached to, or located within three feet of the interior of a window, which sign can be seen through the window from the exterior of the structure."

nal, religious and civic organizations; (2) merchandise, pictures or models of products or services incorporated in a window display; (3) time and temperature devices not related to a product; (4) national, state, religious, fraternal, professional and civic symbols or crests; (5) works of art which in no way identify a product." *Denver Revised Municipal Code* 619.396.

Williams argues that there is a critical distinction between the Denver Sign Code and the Steamboat Springs Sign Code which we have upheld against a similar constitutional attack. *See Veterans of Foreign Wars v. City of Steamboat Springs*, 195 Colo. 44, 575 P.2d 835 (1978). In *Steamboat Springs, supra*, we answered the overbreadth challenge to the Steamboat Springs ordinance and said:

"The appellants initially contend that the sign code defines 'sign' so broadly as to include all types of visual communication, including posters and picket signs. Section 2(B)(50) of the sign code, as contained within the city's zoning ordinance, defines 'sign' as 'an object or device or part thereof situated outdoors or indoors....' *Webster's New International Dictionary* (2d ed. 1959) defines 'situated' as: 'Having a site, situation or location; located, as a town situated on a hill....' We conclude that the sign code regulates only those signs which are affixed in some manner to real property so as to be 'situated.'" *Id.* at 49, 575 P.2d 835.

Williams asserts, however, that the critical difference between the Steamboat Springs Sign Code and the Denver Sign Code is that the former regulates only those signs which are "visible from any public right-of-way." [3] *Steamboat Springs Municipal Code* Ordinance No. 480, section 2(B)(50). The *Denver Revised Municipal Code*, on the other hand, provides:

"613.2–2. Signs Subject to a Permit. Upon application to and issuance by the Department of Zoning Administration of a permit therefor, the following signs may be erected and maintained in all zoning districts.

"613.2–2(1). Signs which are not visible from any public right of way, from any publicly owned land or from any level whatsoever of any other Zone Lot; may be illuminated but such illumination shall not be visible beyond the boundaries of the Zone Lot on which the sign is located; shall not be animated."

Consequently, Williams argues that the lack of a visible sign limitation such as that found in the Steamboat ordinance makes the Denver ordinance unconstitutionally overbroad.

Before addressing the merits of the constitutional issues, we must determine whether Williams has standing to contest the constitutionality of those provisions of the Code which do not form the basis of his conviction.

Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may be constitutionally applied will not be heard to challenge that statute on the ground that it may be unconstitutionally

---

**3.** *Steamboat Springs Municipal Code* Ordinance No. 480, section 2(B)(50) provides: "*Sign.* A sign is an object or device or part thereof situated outdoors or indoors which is used to advertise, identify, display, direct or attract attention to an object, person, institution, organization, purpose, product, service, event or location by any means, including words, letters, figures, designs, symbols, fixtures, colors, motion, illumination or projected images, and which is visible from any public right-of-way. Signs do not include the following:

a. Flags of nations, or an organization or nations, states and cities, fraternal, religious and civic organizations;

b. Merchandise, pictures or materials or products or services included in a window display;

c. Time and temperature devices but only such portion of a structure used as such a device shall be exempt from classification as a sign;

d. National, state, religious, fraternal, professional or civic symbols or crests;

e. Works of art which in no way identify a product; and

f. Barber poles containing no written advertising."

applied to others in circumstances which are not before the court. *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Veterans of Foreign Wars v. City of Steamboat Springs, supra; Bolles v. People*, 189 Colo. 394, 541 P.2d 80 (1975).

In First Amendment cases, traditional standing rules have been broadened to ensure that a statute does not create an unwarranted fear of prosecution, thus chilling participation in protected speech or assembly. *Broadrick v. Oklahoma, supra.* However, the doctrine of overbreadth does not compel indiscriminate facial invalidation of every statute which may chill protected expression. Nor does the doctrine confer standing to challenge the facial constitutionality of a statute on every defendant whose conduct falls within its prohibitions. Rather, as the United States Supreme Court has held:

"Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. [Citation omitted.] To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."

*Broadrick v. Oklahoma, supra*, 413 U.S. at 615, 93 S.Ct. at 2917–18, 37 L.Ed.2d at 842.

▮ It follows that a defendant whose conduct is plainly and legitimately proscribed by a statute possesses standing to attack its facial validity on grounds of overbreadth under *U.S.Const.*, Amend. I, if and only if the reviewing court determines, as a threshold matter of law, that the statute in question is substantially overbroad. *Broadrick v. Oklahoma, supra.*

▮ In his brief, Williams has posed several examples of constitutionally protected communications which could result in prosecution under the Denver Sign Code.[4] To invalidate the ordinance as substantially overbroad on the basis that the definition of "sign" applies to indoor signs not visible from the public right-of-way would require us to predict that the wording and enforcement of the ordinance will effectively deter persons who hang signs indoors, sequestered from public view, from exercising their arguably protected First Amendment right to do so. Because we believe that that prediction is unwarranted and consider any marginal chilling effect on protected commercial expression to be insubstantial when compared with the "plainly legitimate sweep" of the ordinance, we conclude that the challenged provisions of the Denver Revised Municipal Code are not substantially overbroad. Consequently, we conclude that Williams cannot attack the constitutionality of those provisions of the Code which do not apply to the acts or omissions which were the basis for the charges in this case.[5]

Nevertheless, we must still confront Williams' contention that the Denver Sign

4. By way of example, Williams argues that the provisions of the Code prohibit the posting of a sign indoors which is not visible from any public right-of-way, and thus prohibits freedom of speech in a manner which is beyond the scope of permissible governmental regulation. *See Denver Revised Municipal Code* 613.2–2(1).

5. The following testimony was presented at Williams' trial in the county court:
MR. STOFFEL: "As a result [of your inspection and measurements], how many square feet of signs did you find?"
MS. DNEPA: "Found three window signs that are approximately five by eight . . . ."
  * * * * * *

MR. STOFFEL: "Anything else?"
MS. DNEPA: "These are painted window signs."
MR. STOFFEL: "And what else?" Any other signs?"
MS. DNEPA: "There are some electrical signs that were erected by permit, wall signs over above the doors and [inaudible] in the corner."
MR. STOFFEL: "And have you take—taken photographs of those particular signs that you are describing?"
MS. DNEPA: "Yes, I have."
The pictures of the signs were marked and identified, but were never admitted as evidence and are not part of the record.

Code is unconstitutional when measured by his own conduct.

We begin our analysis of Williams' claim with an examination of the applicable principles of zoning law. In *Veterans of Foreign Wars v. City of Steamboat Springs, supra,* we stated that zoning ordinances are presumed to be valid, and that the party attacking the constitutionality of the ordinance bears the burden of overcoming that presumption by proof that the ordinance is invalid beyond a reasonable doubt. We have also said that where the reasonableness of a zoning ordinance is fairly debatable the ordinance must be upheld. *Ford Leasing Development Co. v. Board of County Commissioners,* 186 Colo. 418, 528 P.2d 237 (1974); *Nopro Co. v. Town of Cherry Hills Village,* 180 Colo. 217, 504 P.2d 344 (1972).

Williams is correct in asserting that restrictions on commercial speech are within the ambit of the First Amendment of the United States Constitution and Article II, Section 10 of the Colorado Constitution. *Linmark Associates, Inc. v. Township of Willingboro,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); *Veterans of Foreign Wars v. City of Steamboat Springs, supra.* Signs are by their very nature a means of expression and communications within the meaning of the First Amendment.

The public, however, has the concomitant right to be free from intrusive signs and billboards. *John Donnelly & Sons, Inc. v. Outdoor Advertising Board,* 339 N.E.2d 709 (Mass.1975). Consequently, the principle that a municipality may protect individual privacy by enacting reasonable time, place, and manner regulations, irrespective of content, is applicable to the facts in this case. *Erznoznik v. Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975).

Therefore, our review of Williams' overbreadth and vagueness claims requires a determination of whether the ordinance, as applied to Williams' conduct, prohibits speech that is beyond the scope of permissible governmental regulation.

We also set forth in *Veterans of Foreign Wars v. City of Steamboat Springs, supra,* that the regulation of conduct which touches First Amendment rights requires that we carefully balance the right of a city's exercise of its police power against an ordinance's infringement on protected speech. Regulation of conduct which threatens First Amendment rights is permissible:

"[I]f it is within the constitutional power of the government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free speech; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest...." *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), *reh. denied* 393 U.S. 900, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968).

■ The provisions of the Denver Sign Code which are in issue comply with the test set forth in *United States v. O'Brien, supra.*

First, Denver has the constitutional power to enact zoning regulations. Denver, as a home-rule city, is constitutionally granted legislative powers as to local and municipal matters unless restricted by the terms of the city's charter. *Colo.Const.,* Art. XX, Sec. 6; *Veterans of Foreign Wars v. City of Steamboat Springs, supra; Davis v. City and County of Denver,* 140 Colo. 30, 342 P.2d 674 (1959). Denver's charter contains no restrictions which would prohibit the enactment of reasonable zoning regulations.

Second, the number of visible signs allowed and the permit requirements proscribed by the Denver Sign Code further an important governmental interest. The purpose of the Denver zoning ordinance is:

"This ordinance is enacted to preserve and promote the public health, safety and welfare of the inhabitants of the City and

County of Denver, and of the public generally, and to encourage and facilitate the orderly growth and expansion of the municipality." *Denver Revised Municipal Code* 611.1–1.

Denver's concern for the safety of vehicular traffic and consideration of the intrusive nature of signs, clearly indicate that the restrictions imposed further an important governmental interest. *See Veterans of Foreign Wars v. City of Steamboat Springs, supra.*

Third, the restrictions are not related to the suppression of free speech. Section 613.3–6(4) simply limits the *number* of signs. (Emphasis added.)

Fourth, the incidental restrictions on First Amendment freedoms are no greater than necessary to the furtherance of the legitimate governmental interests of public safety and general welfare.

Finally, we conclude that those provisions of the sign code which Williams was convicted of violating are not void for vagueness. A statute is unconstitutionally vague where it either forbids or requires the doing of an act on terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *People v. Weeks*, 197 Colo. 175, 591 P.2d 91 (1979).

We have previously upheld the constitutionality of a substantially similar definition of "sign," *Denver Revised Municipal Sign Code* 619.396, in *Veterans of Foreign Wars v. City of Steamboat Springs, supra.* The definition of "window sign" contained in *Denver Revised Municipal Code* 619.482, as we view it, is not vague.[6] Finally, we find no vagueness in those provisions of the sign code which prescribe number limitations and permit requirements. *See Denver Revised Municipal Code* 611.2–1(7) and 613.-3–6(4).[7]

Accordingly, the judgment is affirmed.

ROVIRA, J., does not participate.

6. See n. 2, *supra.*