**MARCO LOUNGE, INC., a Colorado corporation, Plaintiff-Appellant,**

v.

**The CITY OF FEDERAL HEIGHTS, a municipal corporation, Defendant-Appellee.**

No. 79SA535.

Supreme Court of Colorado.

March 2, 1981.

Rehearing Denied April 13, 1981.

---

Bayer, McLean, Carey & McGee, P. C., Robert L. McGee, Jr., Gary L. Palumbo, Denver, for plaintiff-appellant.

Tallmadge, Tallmadge, Wallace & Hahn, P. C., John W. Smith, Donald F. D'Antuono, Denver, for defendant-appellee.

LOHR, Justice.

Marco Lounge, Inc. (Marco) appeals from an order of the Adams County district court denying Marco's motion for a preliminary injunction against the City of Federal Heights (City) to prohibit enforcement of the City's order that Marco cease and desist from presenting live, nude entertainment in the bar which it owns and operates in the City. We conclude that the ordinance upon which the cease and desist order was based violates the guarantee of freedom of speech under the First and Fourteenth Amendments[1] and therefore reverse the trial court's order.

The City of Federal Heights adopted the following zoning ordinance prior to the events which gave rise to this litigation:

---

1. *U.S.Const.* Amend. I provides in pertinent part: "Congress shall make no law . . . abridging the freedom of speech, . . .". This guarantee is applicable to the states under *U.S.Const.* Amend. XIV, *Douglas v. City of Jeannette*, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943).

*Colo.Const.* Art. II, § 10 provides in pertinent part: "No law shall be passed impairing the freedom of speech . . .". Our references to the First Amendment guarantee in this opinion are intended to include the Colorado Constitution's protection of free speech as well.

"10-1-5 ZONING DISTRICTS: In order to carry out the provisions of this Ordinance, the Town is hereby divided into the following zoning districts:

| R1 | Residential District | R3 | Apartment District |
|----|---------------------|-----|-------------------|
| R2 | Duplex District | R4 | Mobile Homes |
| B1 | Business District | C1 | Commercial District |
| I | Industrial District | E1 | Entertainment District |

USES PERMITTED AND DENSITY SCHEDULE IN THE E1 DISTRICT:

A. Permitted Uses:

1. Massage Parlors
2. Any place providing live, nude entertainment
3. Outlets for the sale of pornographic material
4. Nothing herein shall apply to premises licensed under the State Liquor Code, except that live, nude entertainment shall be prohibited in all such premises.

B. E-1 ZONING BOUNDARY ORDINANCES WILL BE INITIATED AND ENACTED SOLELY BY THE QUALIFIED ELECTORS OF THE TOWN OF FEDERAL HEIGHTS, CO, UNDER TITLE 1, ARTICLE 40 OF THE COLORADO REVISED STATUTES OF 1973.

C. THE BOARD OF TRUSTEES OF THE TOWN OF FEDERAL HEIGHTS hereby determines that an emergency exists affecting the health, welfare and safety of the citizens of the Town, because of an anticipated influx of the types of uses described herein and, therefore, this ordinance shall become effective immediately upon its posting at three public places within the Town after enactment by the Board of Trustees."

Also part of the City's zoning ordinance is the following provision:

"The listing of any use in said schedule as being permitted in any particular district shall be deemed to be an exclusion of such use from any other district unless the use is specifically permitted in such other district under the language set forth in the schedule."

Marco's bar is licensed under the state liquor code and is situated in a C1 commercial district. No part of the City is zoned E1, the only zoning district in which live, nude entertainment is permitted.

Prior to September 27, 1978, Marco was presenting live, nude entertainment in its bar. On that date the City served a letter upon Marco requiring that it cease and desist from such activity. Marco then brought this action in district court and sought and obtained a temporary restraining order prohibiting enforcement of the City's cease and desist order. Later, after a hearing on a motion for preliminary injunction, the trial court upheld the validity of the zoning ordinance and of the cease and desist order issued to Marco, denied Marco's application for preliminary injunction, and vacated the temporary restraining order. Marco has appealed from that ruling.[2]

Marco challenges the validity of the ordinance upon the grounds that it violates the constitutional guarantee of freedom of speech and denies Marco the equal protection of the laws. We find that the freedom of speech challenge is meritorious and so do not reach the equal protection issue.

I.

Before we consider the constitutional questions, we must determine whether Marco has standing to raise them.

A.

■ In the usual case "[t]he proper inquiry on standing is whether the plaintiff has suffered injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions." *Wimberly v. Ettenberg*, 194 Colo. 163, 168, 570 P.2d 535, 539 (1977); *accord, Denver Urban Renewal Authority v. Byrne*, Colo., 618 P.2d 1374 (1980); *Dodge v. Department of Social Services*, Colo., 600 P.2d 70 (1979). Here, the City's order prohibiting live, nude entertainment in Marco's bar plainly establishes

2. The denial of a preliminary injunction is appealable. C.A.R. 1(a)(3). The trial court specifically ruled that the ordinance does not violate the United States Constitution. Although at the preliminary injunction stage the scrutiny of that ordinance could have been limited to a determination of the likelihood that Marco would prevail on the merits, *see Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Combined Communications Corp. v. City and County of Denver*, 186 Colo. 443, 528 P.2d 249 (1974), the trial court did not so limit its ruling. We treat the ruling as one intended to be final, not merely a forecast that Marco probably would be unable to establish the constitutional invalidity of the ordinance at trial.

injury in fact to Marco's interest in presenting such entertainment. Under the *Wimberly* test, therefore, our inquiry must focus on whether Marco's interest is legally protected.

■ The City does not contend that all live, nude entertainment is obscene, and thus not protected by the First Amendment. *See Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). It recognizes, as it must, that included within live, nude entertainment are forms of communication and expression which are protected by the First Amendment. *See Erznoznik v. the City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); *Doran v. Salem, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); *Felix v. Young*, 536 F.2d 1126 (6th Cir. 1976); *Salem Inn, Inc. v. Frank*, 522 F.2d 1045 (2d Cir. 1975).

The City's position is that live, nude entertainment can be prohibited in state liquor-licensed establishments notwithstanding the fact that such a prohibition extends to constitutionally protected expression. *See California v. LaRue, supra.* Thus, the City contends that Marco lacks a legally protected interest upon which to base its challenge to the zoning ordinance. We disagree.

B.

■ We predicate our conclusion that Marco has standing to challenge the City's zoning ordinance upon an exception to the *Wimberly* rule recognized in First Amendment cases. In such cases the rules of standing are broadened to permit parties to assert the facial unconstitutionality of laws or regulations which may create a chilling effect on the freedom of expression of persons not before the court, even though the laws or regulations could be constitutionally applied to the parties to the case. *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Williams v. City and County of Denver*, Colo., 622 P.2d 542 (1981); *Bolles v.*

*People*, 189 Colo. 394, 541 P.2d 80 (1975). Such laws or regulations are said to be overbroad. *Id.*

The reason for relaxation of traditional rules of standing in First Amendment cases is that:

" 'The possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes.' "

*Bolles v. People, supra,* at 396, 541 P.2d at 82, quoting *Broadrick v. Oklahoma, supra,* 413 U.S. at 612, 93 S.Ct. at 2915, 38 L.Ed.2d at 840.

■ The doctrine of overbreadth must be applied with caution, in recognition of the interest of the state in controlling harmful, constitutionally unprotected conduct. *See Broadrick v. Oklahoma, supra.* That principle was developed in *Broadrick* as follows:

"It remains a 'matter of no little difficulty' to determine when a law may properly be held void on its face and when 'such summary action' is inappropriate. *Coates v. City of Cincinnati*, 402 U.S. 611, 617, 91 S.Ct. 1686, 1689, 29 L.Ed.2d 214 (1971) (opinion of Black, J.). But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admit-

tedly within its power to proscribe. Cf. *Alderman v. United States,* 394 U.S. 165, 174–175, 89 S.Ct. 961, 966–67, 22 L.Ed.2d 176 (1969). To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."

*Id.* at 615, 93 S.Ct. at 2917, 37 L.Ed.2d at 842. As the ability to narrow the applicability of a statute by construction increases, the appropriateness of allowing a party within the legitimate sweep of the statute to challenge it for overbreadth diminishes. *Id.* Also, overbreadth challenges by such a party are less favored if the statute is not censorial, *i. e.,* if it is neutral in application rather than directed at particular groups or viewpoints. *Id.*

■ For the purpose of the *Broadrick* test, we assume that live, nude entertainment could be proscribed in state liquor-licensed establishments under *California v. LaRue, supra, i. e.,* that the "plainly legitimate sweep" of the ordinance extends to prohibition of live, nude entertainment in those establishments.[3] But this ordinance also affects theaters, concert halls and other non-liquor-licensed establishments which might present live, nude entertainment. Those establishments are beyond the legitimate reach of an ordinance restricting the presentation of the constitutionally protected features of live, nude entertainment[4] to a degree more severe than permissible as a reasonable regulation of time, place or manner of presenting such entertainment. *See Young v. American Mini-Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (dealing specifically with place of presentation only). The wide reach of the zoning ordinance prohibition in this case is not easily or fairly subject to restriction by a narrowing construction. *See Erznoznik v. City of Jacksonville, supra.* Nor is the zoning ordinance plan neutral and non-censorial. It is specifically directed at a particular form of expression: live, nude entertainment, *See Broadrick v. Oklahoma, supra.* We conclude that the excessive sweep of the City's zoning regulation beyond application to state-liquor-licensed establishments, if not supportable as a reasonable time, place and manner restriction, is both real and substantial within the meaning of *Broadrick. See Erznoznik v. City of Jacksonville, supra.* Thus we conclude that Marco has standing to challenge the zoning ordinance as overbroad. *See Doran v. Salem Inn, Inc., supra.*[5]

## II.

■ We proceed next to the question whether the City's zoning ordinance is constitutionally supportable, and conclude that it is not.

3. It is not at all certain, however, that the City zoning ordinance here in question can be supported, even as to establishments licensed under the state liquor laws. In *California v. La-Rue, supra,* the United States Supreme Court concluded from the record that the performances prohibited, though not obscene, "[partook] more of gross sexuality than of communication." The scope of "live, nude entertainment" extends beyond grossly sexual performances and embraces activity different in kind from that found to have been permissibly proscribed in *LaRue.*

Finding, as we do, another basis for Marco's standing to challenge the City's zoning ordinance and another reason establishing the constitutional infirmity of that ordinance, we do not pursue further the question whether the City could prohibit all activity comprehended within "live, nude entertainment" in state liquor-licensed establishments.

4. Falling within the ordinance's scope but clearly entitled to First Amendment protection are such serious artistic works as "Ballet Africains." *See Doran v. Salem Inn, Inc., supra.*

5. *People v. Bridges,* Colo., 620 P.2d 1 (1980), and *People v. Weeks,* 197 Colo. 175, 591 P.2d 91 (1979), are not to the contrary, although it may be questioned whether the limitation on standing to assert First Amendment rights of parties not before the court as recognized in those cases is fully consistent with the controlling authority of *Broadrick v. Oklahoma, supra,* and *Bigelow v. Virginia, supra,* as well as with *Bolles v. People, supra.* In *Bridges* we stated that limitation as follows: "standing to attack a statute is limited to only those defendants whose conduct is at the periphery of the activity proscribed by the statute." *People v. Bridges, supra,* 620 P.2d at 5.

The United States Supreme Court has recognized that zoning ordinances which regulate the time, place and manner of uses such as adult movie theatres, involving presentation of some protected expression, are permissible if they are both reasonable and necessary to further significant governmental interests. *Young v. American Mini-Theatres, supra.*[6] Municipalities may well have a significant governmental interest in imposing reasonable limitations on the time, place and manner of presentation of some forms of live, nude entertainment. *See Young v. American Mini-Theatres, supra; California v. LaRue, supra.* Here, it is the reasonableness of the zoning regulations in a First Amendment context which is at issue.

In *Young,* Detroit's zoning regulations mandating dispersal of adult movie theatres, adult book stores, and kindred uses, by limiting their proximity to each other and to residential uses were sustained. The United States Supreme Court concluded that the zoning regulations left "the market for [adult theatres] . . . essentially unrestrained." *Id.* at 62, 96 S.Ct. at 2448, 49 L.Ed.2d at 321. *See Hart Bookstores, Inc. v. Edmisten,* 612 F.2d 821 (4th Cir. 1979); *Northend Cinema, Inc. v. City of Seattle,* 90 Wash.2d 709, 585 P.2d 1153 (1978).[7]

In *California v. LaRue, supra,* the United States Supreme Court upheld a department of alcoholic beverage control regulation of the State of California imposing a complete prohibition of specified sexually related acts and anatomical displays, live or on film, in premises licensed by the State to sell alcoholic beverages. In that case the Twenty-First Amendment power to regulate traffic in intoxicating liquor [8] was recognized as an important source of state authority, supplementing the general police power of the state. *Accord, New Safari Lounge, Inc. v. City of Colorado Springs,* 193 Colo. 428, 567 P.2d 372 (1977). In upholding the regulation in *LaRue,* it was deemed "a critical fact . . . that California has not forbidden these performances across the board" *California v. LaRue, supra,* at 118, 93 S.Ct. at 397, 34 L.Ed.2d at 352.

In none of the above cases was a form of protected speech totally extinguished within a municipality for any period of time. *See Developments in the Law—Zoning,* 91 Harv.L.Rev. 1427, 1558 (1978). Where an individual establishment was affected, an amortization period was allowed. *Cf.* N. Marcus, *Zoning Obscenity,* 27 Buffalo L.Rev. 1, 13–14 (1978) (discussing a one-year amortization period for proposed New York City zoning of adult establishments). As Justice Stevens noted in *Young v. Amer-*

**6.** In *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), upholding a conviction for violation of a statute prohibiting the knowing destruction of a draft registration certificate, the United States Supreme Court summarized the principles applicable to governmental regulation of communicative conduct in general as follows: "This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. To characterize the quality of the governmental interest which must appear, the Court has employed a variety of descriptive terms: compelling; substantial; subordinating; paramount; cogent; strong. Whatever imprecision inheres in these terms, we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and

if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id.* at 376–377, 88 S.Ct. at 1679, 20 L.Ed.2d at 679–680.

**7.** *Young* and its progeny are remarkable in permitting reasonable time, place and manner restrictions on speech of a specified content, going beyond earlier cases permitting such restrictions on all speech irrespective of content. *See Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949).

**8.** "The transportation or importation into any state . . . of the United States for delivery and use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." *U.S. Const.* amend. XXI. Here, we assume the City is exercising the State powers under the Twenty-First Amendment, pursuant to appropriate delegation, in licensing establishments to sell liquor.

*ican Mini-Theatres, supra,* "[t]he situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech." *Id.* at 71, n. 35, 96 S.Ct. at 2453, 49 L.Ed.2d at 327. Yet this is precisely the effect of the ordinance before us.

The City's zoning plan lacks the narrow range of applicability of the prohibition of protected speech in *LaRue* and lacks the reasonableness of the zoning restrictions in *Young* and related cases. Effectively, it bans live, nude entertainment in the City of Federal Heights, and cannot be sustained. *See Bayside Enterprises, Inc. v. Carson,* 450 F.Supp. 696 (M.D.Fla.1978).

■ At present, the presentation of live, nude entertainment anywhere in the City is forbidden. Although such use is permitted in an E1 zoning district, there is no such district and there is no assurance that such a district will ever be created. The ordinance limits the manner of creation of such a district to the enactment of an ordinance amendment by initiative. *See* section 1–40–101, *et seq.,* C.R.S.1973. The ordinance does not mandate an election to determine whether the voters wish to create an E1 district. Whether the City will ever have such a district is to be determined by the unbridled and standardless decision of the people. This is absolute censorship pending an election which may never be held. If such election should occur the ordinance permits continuation of this censorship by a majority vote, the very evil which the First Amendment was adopted to prevent.[9]

Those cases recognizing that permits may be required in some instances as reasonable conditions to the exercise of First Amendment rights point up the unreasonableness of the City's plan here. In such cases, a permit system has been sustained only when there can be shown a legitimate governmental interest in requiring a permit, and where the criteria for administrative issuance of such a permit are narrow, objective and definite. *See, e. g., Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975) (permit for use of municipal theatre); *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (permit for public demonstration or march). The procedure also must include opportunity for prompt judicial review of an administrative decision to deny a permit. *See, e. g., Southeastern Promotions, Ltd. v. Conrad, supra;*[10] *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) (license to exhibit adult movies). The contrast between those cases and the City's E1 zoning plan here could hardly be more stark.

■ *Shuttlesworth* and *Freedman* also illustrate the poverty of the City's argument that Marco cannot complain unless and until it attempts to obtain enactment of an initiated ordinance to establish an E1 entertainment zoning district and is unsuccessful in doing so. Putting aside the question whether the time and expense incident to such a procedure would in themselves unconstitutionally burden exercise of First Amendment rights, *see Bayside Enterprises, Inc. v. Carson, supra,* we hold that Mar-

9. A requirement that zoning ordinances be subject to approval by the voters is not per se unreasonable. *See Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976). But where such a plan affects exercise of rights under the First Amendment, additional considerations are involved, requiring a careful analysis of the effect of the plan upon exercise of such rights. *See Developments in the Law—Zoning, supra; see generally, Note, The Proper Use of Referenda in Rezoning,* 29 *Stanford L.Rev.* 819 (1977).

10. In *Southeastern Promotions, Ltd. v. Conrad, supra,* in finding the procedures for licensing use of municipally owned theatres, involving administrative evaluation of proposed productions, to be constitutionally inadequate, the United States Supreme Court said: "We held in *Freedman,* and we reaffirm here, that a system of prior restraint runs afoul of the First Amendment if it lacks certain safeguards: *First,* the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor. *Second,* any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo. *Third,* a prompt final judicial determination must be assured." *Id.* at 560, 95 S.Ct. at 1247, 43 L.Ed.2d at 460.

co's right to challenge the zoning plan cannot be conditioned on lack of success in a standardless, unreviewable popular election. *See, e. g., Freedman v. Maryland, supra.*[11]

We reverse the order of the trial court and remand this matter to that court with directions to issue a preliminary injunction against the City as prayed for by Marco, and for further proceedings consistent with the views expressed in this opinion.

LEE, J., dissents, and HODGES, C. J., and ROVIRA, J., join in dissent.

ROVIRA, J., dissents, and HODGES, C. J., and LEE, J., join in dissent.

LEE, Justice, dissenting.

I respectfully dissent.

It is clear, as appears to be conceded by the majority opinion, that the proscription of live, nude entertainment in premises operating under a state liquor license is constitutionally permissible as a valid exercise of the police power of the state. *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). The Supreme Court there upheld the validity of statutorily authorized regulations banning nude dancing in liquor-licensed premises in the face of an attack that the regulations violated the First and Fourteenth Amendments to the United States Constitution. The Court observed that the state's police power, as strengthened by its authority to regulate liquor sales within its borders pursuant to the Twenty-first Amendment to the United States Constitution, is enough to validate the ban on live, nude dancing [entertainment] despite the fact that some of the dancing may admittedly be protected speech.

"The Department's conclusion, embodied in these regulations, that certain sexual performances and the dispensation of liquor by the drink ought not to occur at premises that have licenses was not an irrational one. Given the added presumption in favor of the validity of the state

regulation in this area that the Twenty-first Amendment requires, we cannot hold that the regulations on their face violate the Federal Constitution." *California v. LaRue, supra.*

This holding was reaffirmed in *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), where the Court stated:

"Although the customary 'barroom' type of nude dancing may involve only the barest minimum of protected expression, we recognized in *California v. LaRue,* 409 U.S. 109, 118, 93 S.Ct. 390, 397, 34 L.Ed.2d 342 (1972), that this form of entertainment might be entitled to First and Fourteenth Amendment protection under some circumstances. In *LaRue,* however, we concluded that the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amendment, outweighed any First Amendment interest in nude dancing and that a State could therefore ban such dancing as a part of its liquor license program."

In my view, consistent with the reasoning of *California v. LaRue, supra,* the legislative determination by the City of Federal Heights prohibiting live, nude entertainment in premises licensed under the State Liquor Code is not an irrational exercise of the police power, nor does it constitute an impermissible infringement upon the First Amendment right of freedom of expression.

Admittedly, a citywide proscription of this type of entertainment by ordinance, not framed on obscenity considerations, is not permissible as recognized in *LaRue, supra,* where the Court stated:

" * * * While we agree that at least some of the performances to which these regulations address themselves are within the limits of the constitutional protection of freedom of expression, *the critical fact is that California has not forbidden these performances across the board.* It has merely proscribed such performances in

---

11. This is not a case where administrative remedies exist and must be exhausted before judicial relief may be sought. *See, e. g., Heron v.*

*City of Denver,* 131 Colo. 501, 283 P.2d 647 (1955); *People ex rel. Dunbar v. District Court,* 129 Colo. 203, 268 P.2d 1098 (1954).

establishments that it licenses to sell liquor by the drink." (Emphasis added.) *See also Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). I do not agree with the majority conclusion that the ordinance in question totally bans such activity citywide. By its express terms, the ordinance merely relegates the exploitation of this type of entertainment to the E1 Entertainment District provided for in the ordinance. Although it prohibits such entertainment in all liquor-licensed premises throughout the City, it does not totally ban such activity. *Young v. American Mini Theatres, supra*, recognizes the right to limit such activities to certain locations within a city under a zoning ordinance enacted pursuant to the police power.

The question is squarely presented whether Marco, whose conduct clearly falls within the constitutionally valid limitation of the ordinance, has standing to assert a facial overbreadth challenge to the ordinance.

The majority predicates its conclusion that Marco has standing to challenge the constitutionality of this ordinance on the broadened standing rules recognized in First Amendment cases under *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) and *Williams v. City and County of Denver*, Colo., 622 P.2d 542 (1981). The broad reading given these cases by the majority opinion is another expansion of First Amendment standing rules.

The majority correctly points out that:
 " * * * Particularly where conduct and not merely speech is involved, we believe that the [facial] overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma, supra.*

In my view, the ordinance is not facially overbroad. The "plainly legitimate sweep" of the ordinance is to prohibit the proscribed conduct in liquor-licensed premises, as authorized by *LaRue, supra*, and to relegate to, but permit, such conduct in a particular zone within the city, as authorized by *Young v. American Mini Theatres, supra.*

In *Williams, supra*, we stated:
 " * * * However, the doctrine of overbreadth does not compel indiscriminate facial invalidation of every statute which may chill protected expression. Nor does the doctrine confer standing to challenge the facial constitutionality of a statute on every defendant whose conduct falls within its prohibition. * * *

 \*    \*    \*    \*    \*    \*

 "It follows that a defendant whose conduct is plainly and legitimately proscribed by a statute possesses standing to attack its facial validity on grounds of overbreadth under *U.S.Const.*, Amend I, *if and only if* the reviewing court determines, as a threshold matter of law, that the statute in question is substantially overbroad. *Broadrick v. Oklahoma, supra.*" (Emphasis added.)

It would seem to follow from *Williams, supra*, that since the ordinance has been legally applied to Marco, and since the ordinance facially contains no invalid proscription of the conduct which it seeks to regulate, Marco has no standing to challenge the ordinance. Nonetheless, the majority grants Marco standing.

The majority speculates that the ordinance effectively bans live, nude entertainment within the City of Federal Heights and thus cannot be sustained. Neither Marco nor any other person has attempted to implement the permissive provisions of the ordinance which would allow such entertainment in an E1 Entertainment District to be created through the initiative process. The majority's conclusion is speculative, without basis in fact, and premature. Consideration of such a circumstance should be deferred until the time when, and if, and absolute ban on such activity results from a rejection by the voters of Federal Heights of implementation of the ordinance.

I would affirm the judgment of the district court.

I am authorized to say that Chief Justice HODGES and Justice ROVIRA join in this dissent.

ROVIRA, Justice, dissenting.

I respectfully dissent.

The majority opinion, without benefit of any evidence, concludes as a matter of fact that the zoning plan of the City of Federal Heights amounts to an outright ban on all forms of live, nude entertainment. I disagree with this conclusion for the simple reason that I see no evidence to support it. The type of entertainment provided in the Marco Lounge is subject to legitimate local regulation. *See Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (zoning may be used either to confine or to disperse "adult" entertainment centers into certain municipal locations); *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972) (live, nude entertainment may be proscribed from the premises of businesses operating under a state liquor license). Marco has made no attempt to establish an E1 Entertainment District and has failed to demonstrate that, if such an attempt were made, it would be doomed to failure. Although courts must be alert to the "possibility of pretextual use of power to zone as a means of suppressing expression," it is not clear from the present record that this is such a case. *Young v. American Mini Theatres, supra*, 427 U.S. at 84, 96 S.Ct. at 2459 (Powell, J., concurring in the judgment and portions of the opinion).

At such time as Marco has attempted to establish an E1 Entertainment District and the qualified electors of Federal Heights have defeated such a proposal, then it would be in a position to complain of a denial of freedom of speech, and it would have standing to challenge the constitutionality of the zoning ordinance.

The majority posits the proposition that "whether the City will ever have such a district is to be determined by the unbridled and standardless decision of the people" and that "this is absolute censorship pending an election which may never be held."

The majority opinion reflects little faith in the democratic process. We cannot *presume* that the people are misguided in their choices. If the Federal Heights ordinance in fact does misguide them, we can address the issue as part of a timely appeal. Given the necessary information, the people of Federal Heights are free to adopt an E1 Entertainment District ordinance and thereby establish an appropriate location for the type of entertainment which Marco proposes to offer.

If such an ordinance is not adopted, then Marco would, in my opinion, have standing to raise its constitutional arguments.

I would affirm the judgment of the district court.

I am authorized to say that Chief Justice HODGES and Justice LEE join in this dissent.